IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SEVEN NETWORKS, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-CV-01036-N |
| | § | |
| MOTOROLA MOBILITY LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Motorola Mobility LLC's ("Motorola") motion to dismiss [16].  For the reasons below, the court grants in part and denies in part the motion.

## I. ORIGINS OF THE PATENT DISPUTE

Plaintiff SEVEN Networks LLC ("SEVEN") owns several patents dealing with power-saving functionalities for electronic devices.  SEVEN previously filed patent infringement lawsuits against nonparty Google LLC ("Google") alleging certain functionalities in Google's Android smartphone operating system infringed SEVEN's patents.[1]  Around the same time, SEVEN also filed similar suits against two of Google's customers (not including Defendant Motorola) that manufacture cell phones that run Google's Android operating system.

---

[1] The two lawsuits between SEVEN and Google were filed in the Eastern District of Texas, styled *SEVEN Networks, LLC v. Google LLC*, No. 2:17-cv-00442-JRG ("*Google I*") and *SEVEN Networks, LLC v. Google LLC*, No. 2:18-cv-00477-JRG ("*Google II*").

ORDER – PAGE 1

According to SEVEN, in February 2019, SEVEN and Google executed a Settlement and License Agreement (the "SEVEN-Google Agreement") under which SEVEN granted Google and its affiliates a license under certain SEVEN-owned patents.  *See* Decl. of Samuel F. Baxter [36]; Pl.'s Ex. A 1-16 [36] (SEVEN-Google Agreement).  As part of the agreement, SEVEN and Google entered a covenant not to sue and agreed to stipulate to the dismissal of all claims in the SEVEN-Google litigation.  The SEVEN-Google Agreement expressly excluded Motorola from the list of Google affiliates covered by the license, covenant not to sue, and release of claims.  Pl.'s Ex. A 4-5, 8, 34.  Pursuant to the terms of their agreement, SEVEN and Google then jointly filed stipulated dismissals that resulted in final judgments in both cases that dismissed SEVEN's claims against Google with prejudice.[2]  Def.'s App. 153-58, 218-23 [17-1].  But neither the stipulated dismissals nor the final judgments in either case mentioned the SEVEN-Google Agreement or included any other express reservations of SEVEN's claims.  *See id.*

SEVEN later filed this patent infringement lawsuit against Motorola, a manufacturer and seller of smart phones that run Android.  SEVEN asserts nine different patents in the present suit, only three of which were asserted in the prior litigation against Google and its other customers.  Motorola filed a motion to dismiss arguing that the judgments dismissing

---

[2] The Court takes judicial notice of the stipulated dismissals, final judgments, and other relevant docket entries cited in this Order from both *Google I* and *Google II* as they are matters of public record.  *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). Additionally, the Court takes judicial notice of the public records of the United States Patent and Trademark Office cited in this Order.

SEVEN's claims against Google with prejudice foreclose SEVEN's claims in this lawsuit, including SEVEN's claims based on patents that were not at issue in the previous cases.

## II. LEGAL STANDARDS

### A. *Rule 12(b)(6) Legal Standard*

When deciding a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted). "When reviewing a motion to dismiss, a district court must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (internal quotation marks omitted).

ORDER – PAGE 3

### B.  Claim Preclusion Legal Standard

Claim preclusion, or res judicata, bars "repetitious suits involving the same cause of action once a court of competent jurisdiction has entered a final judgment on the merits." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 315 (2011) (internal quotation marks omitted).  While claim preclusion is generally an affirmative defense best resolved at summary judgment or at trial, dismissal under Rule 12(b)(6) on res judicata grounds "is appropriate when the elements of res judicata are apparent on the face of the pleadings." *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 571 (5th Cir. 2021) (quoting *Murry v. Gen. Servs. Admin.*, 553 F. App'x 362, 364 (5th Cir. 2014) (unpub.)).  Claim preclusion applies where: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions."  *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 521 (5th Cir. 2016).

While regional circuit law applies to general issues of claim preclusion, Federal Circuit law applies to issues peculiar to patent law such as whether two causes of action for patent infringement are the same.  *In re PersonalWeb Techs. LLC*, 961 F.3d 1365, 1374 (Fed. Cir. 2020).  The Federal Circuit "define[s] a cause of action by the transactional facts from which it arises" and analyzes claim preclusion by "consider[ing] the extent of the factual overlap between the two alleged [causes of action] at issue."  *Id.* at 1374-75 (citation omitted).  "[E]ssential transactional facts include both the asserted patents and the accused activity."  *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1165 (Fed. Cir. 2018).  Claim

preclusion does not apply unless the accused products or processes in both cases are "essentially the same," meaning "the differences between them are merely colorable or unrelated to the limitations in the claim of the patent." *PersonalWeb*, 961 F.3d at 1375 (internal quotation marks omitted). A cause of action for patent infringement may be barred by claim preclusion even where the patent asserted was not asserted in the earlier case. Where different patents are asserted, "a judgment in the first suit will trigger claim preclusion only if the scope of the asserted patent claims in the two suits is essentially the same." *SimpleAir*, 884 F.3d at 1167. Thus, claim preclusion does not apply if either the accused activity or the scope of the patent claims at issue is materially different than in the prior case.

Because traditional claim preclusion bars only actions that were or could have been brought in a past case, the bar applies only to infringing conduct occurring prior to the date of a final judgment. *In re Provider Meds, L.L.C.*, 907 F.3d 845, 852-55 (5th Cir. 2018); *SimpleAir*, 884 F.3d at 1170 ("[C]laim preclusion does not bar a party from asserting infringement based on activity occurring after the judgment in the earlier suit."). However, as discussed below, the preclusive effect of a prior judgment may extend to infringing acts occurring after the date of judgment in some circumstances.

### C. The Kessler Doctrine

The *Kessler* doctrine, derived from the Supreme Court's decision in *Kessler v. Eldred*, 206 U.S. 285 (1907), extends a judgment's preclusive effect to post-judgment conduct in certain patent infringement cases. *PersonalWeb*, 961 F.3d at 1376. The purpose of the doctrine is to "allow[] an adjudged *non-infringer* to avoid repeated harassment for

continuing its business as usual post-final judgment in a patent action where circumstances justify that result." *Id.* (quoting *Brain Life LLC v. Elekta Inc.*, 746 F.3d 1045, 1056 (Fed. Cir. 2014)) (emphasis in original).  The doctrine protects a manufacturer's judgment right by preventing a patentee from suing a manufacturer or its customers for the same allegedly infringing activity after the manufacturer obtained a final adjudication in its favor.  *Id.* at 1378.  The issue of non-infringement need not be "actually litigated" in a prior case for a party to become an adjudged non-infringer.  *Id.* at 1379.  However, a party that obtains a dismissal by taking a license is a "willing licensee, not an adjudicated non-infringer." *Id.* at 1378 (citing *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1301 (Fed. Cir. 2017)); *see also In re Provider Meds, L.L.C.*, 907 F.3d 845, 853 n.32 (5th Cir. 2018) ("[T]he *Mentor Graphics* panel explained that [the *Kessler* doctrine] does not apply where a party received a license to the patent and the patentholder dismissed its claims with prejudice . . . .").  Accordingly, an accused infringer that obtains a judgment on the merits by entering a license agreement cannot later invoke that judgment to infringe the patents involved in the prior case with impunity.

### III.  THE SEVEN-GOOGLE AGREEMENT CAN CHANGE ONLY THE PRECLUSIVE EFFECT OF THE RELATED JUDGMENTS FOR PURPOSES OF THE *KESSLER* DOCTRINE

Much of the parties' briefing focuses on whether the SEVEN-Google Agreement alters the preclusive effect of the final judgments in *Google I* and *Google II*.  Critically, neither the stipulations of dismissal nor the final judgments in those cases mention the settlement agreement or make any other express reservations of SEVEN's claims.  The

ORDER – PAGE 6

Court must decide whether the settlement agreement nonetheless alters the preclusive effect of the judgments.

### A. Fifth Circuit Law Determines Whether a Settlement Agreement Alters the Preclusive Effect of a Final Judgment

Because the issue of whether a settlement agreement alters the preclusive effect of a final judgment is not peculiar to patent law, Fifth Circuit law applies. SEVEN argues that "Federal Circuit law determines which *claims* are barred by a preclusive judgment in a patent case," including which claims are affected by an agreement between the parties. Pl.'s Resp. Br. 9-10 n.4 [35] (emphasis in original). The Court disagrees. Whether a particular cause of action is involved in both a prior judgment and a present case necessarily involves two issues: (1) which causes of action were "involved" in the prior judgment, and (2) whether the cause of action in the present case is the legal equivalent of any of those involved in the prior judgment. The Federal Circuit has held that Federal Circuit law applies to the second question, because the scope of a particular patent infringement claim is an issue peculiar to patent law. *PersonalWeb*, 961 F.3d at 1374. But the question of whether a settlement agreement reserving certain causes of action altered a particular judgment turns on general principles of claim preclusion, and regional circuit law applies.

### B. Under Fifth Circuit Law the Agreement Must Be Incorporated into the Judgment to Alter its Preclusive Effect

The Fifth Circuit has held that when a judgment does not incorporate a settlement agreement or any express reservations, the preclusive effect of that judgment should be analyzed under the same test that applies to any other judgment on the merits. *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 402-03 (5th Cir. 2009). SEVEN argues that

ORDER – PAGE 7

reliance on *Oreck* is misplaced because its discussion of incorporation is dicta and the case is distinguishable.  *See* Pl.'s Surreply Br. at 3-5 [50].  While the exact holding in *Oreck* on this point is unclear, the Court disagrees with SEVEN's characterization of the relevant passage from that case.  The *Oreck* court held that the intentions reflected in a settlement agreement did not alter the scope of a judgment's preclusive effect "especially since the final judgment . . . simply dismissed the case with prejudice without incorporating the Settlement Agreement, the terms of which were finalized after the consent judgment was entered, or any express reservations."  *Oreck*, 560 F.3d at 402.  The *Oreck* court did mention that the parties finalized the settlement agreement after the judgment but did not base its holding on that fact as SEVEN suggests.  Instead, the Fifth Circuit proceeded to approvingly cite the U.S. Supreme Court for the general proposition that a "judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order."  *See id.* at 402 (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381 (1994)).  By those terms, even if SEVEN and Google finalized their agreement prior to the stipulated dismissal and judgment, the judge's awareness and even approval of those terms do not make them part of the judgment.  Thus, the judgments in *Google I* and *Google II* preclude the claims here to the extent they preclude the causes of action in this case under the ordinary law of claim preclusion.

### C.  The SEVEN-Google Agreement May Prevent Application of the Kessler *Doctrine to SEVEN's Claims*

Motorola argues the Federal Circuit's *Kessler* doctrine extends the preclusive effect of the *Google I* and *Google II* judgments to claims based on Motorola's post-judgment

conduct.  However, dismissal under the *Kessler* doctrine would be improper because SEVEN alleges that Google obtained final judgments in the prior litigation by taking a license.  *See* Pl.'s Ex. A. [36] (SEVEN-Google Agreement).

Motorola is correct that the *Kessler* doctrine's "adjudged noninfringer" terminology does not create a requirement that the issue be actually litigated in a prior case.  *In re PersonalWeb*, 961 F.3d at 1376-77.  But the Federal Circuit has made clear that the term "adjudged noninfringer" is meant to differentiate between licensees and those who successfully defeated allegations of infringement.  *PersonalWeb*, 961 F.3d at 1377-78 (discussing *Mentor Graphics*, 851 F.3d 1275).  Motorola does not dispute that the litigation in *Google I* and *Google II* ended due to the parties reaching a settlement agreement under which Google took a license.  Thus, it is not clear from the pleadings that Google and its privies are "adjudicated non-infringers" for purposes of the *Kessler* doctrine, and the judgments may ultimately have no preclusive effect on Motorola's post-judgment conduct.

The Court disagrees with Motorola's contention that the judgment's failure to incorporate or otherwise mention the SEVEN-Google settlement agreement also triggers the *Kessler* doctrine bar here.  The *Kessler* doctrine is a creature of Federal Circuit law specific to patent law.  And even if Fifth Circuit law would extend ordinary claim preclusion to the circumstances here, the policy purposes driving the Federal Circuit's cases indicate that the Federal Circuit would decline to apply the *Kessler* doctrine.  The purpose of the *Kessler* doctrine is to prevent patentees from depriving litigants of the benefits of victory by harassing them with follow-up litigation on patent infringement claims the patentee has already lost.  Allowing SEVEN's claims against Motorola to

ORDER – PAGE 9

proceed presents no such risk.   SEVEN alleges that Google, Motorola's own privy, expressly excluded Motorola from the scope of the license, covenant not to sue, and claim release of a license agreement Google bargained for.   That agreement contained no concessions by SEVEN regarding noninfringement of its patents.   It can hardly be said that SEVEN would be harassing Google by bringing claims that Google disclaimed in that agreement.

The Federal Circuit has already rejected such counter-intuitive results.   By excepting "willing licensees" from the *Kessler* doctrine, the Federal Circuit sought to prevent the "counterintuitive result" of allowing "any licensee holding a license obtained through litigation [to] breach that license, yet prevent the patentee from asserting infringement against new products not covered by the license."   *In re Provider Meds, L.L.C.*, 907 F.3d at 853 (quoting *Mentor Graphics*, 851 F.3d at 1300).   Similarly, applying the *Kessler* doctrine here may permanently extinguish SEVEN's patent rights even as to infringement by parties Google allegedly expressly left out of the claim release it bargained for.   It is sufficient, at least at the motion to dismiss stage, that SEVEN alleges Google obtained its judgment right by executing a license agreement.   Accordingly, the Court denies Motorola's motion to dismiss as to all of SEVEN's claims that arise from alleged infringement not barred under ordinary claim preclusion.

## IV.  CLAIM PRECLUSION

Only the fourth element of the claim preclusion test is at issue here as SEVEN does not dispute that the first three elements of the claim preclusion test are satisfied.   SEVEN does not contest that Motorola is Google's privy, that the Eastern District of Texas is a

ORDER – PAGE 10

court of competent jurisdiction, or that the orders dismissing the claims in *Google I* and *Google II* with prejudice constitute final judgments on the merits. *See Brooks v. Raymond Dugat Co. L C*, 336 F.3d 360, 362 (5th Cir. 2003) ("A dismissal with prejudice is a final judgment on the merits."); *PersonalWeb*, 961 F.3d at 1379 ("[A] stipulated dismissal with prejudice . . . operated as an adjudication on the merits for claim preclusion purposes."). Accordingly, the Court need only decide whether it is apparent on the face of the pleadings that the same causes of action were involved in both the prior judgments and in this case.

The Court agrees with Motorola that the products relevant to the rest of the Court's claim preclusion analysis are essentially the same as those involved in the prior cases. Because the Court holds dismissal via preclusion doctrines is proper here only for conduct occurring before the dates of the prior judgments, this Order addresses this issue as applied only to products in existence at the time of those judgments. SEVEN's briefing disputes Motorola's contention that products launched after the Google litigation are essentially the same. SEVEN makes no argument that the accused Motorola products in existence prior to February 11, 2019 (the date of the last judgment against Google) are materially different than those involved in the Google litigation or that there is any difference in their operation (compared to Google's devices) in the way they allegedly infringe the patents in suit. The accused products in this case allegedly infringed the patents by running the same Android operating system and the same functionalities of it (Doze and Firebase Cloud Messaging). *See* Def.'s App. 1-15 (comparing allegations in SEVEN's complaints). Thus, the Court agrees with Motorola that for this claim preclusion analysis, the accused product or processes here are essentially the same as in *Google I* and *Google II* for SEVEN's patent

ORDER – PAGE 11

infringement allegations directed toward the accused Motorola devices that existed before the judgments in those cases.

### A. The Court Grants the Motion in Part as to SEVEN's Causes of Action Asserting the Same Patents Asserted Against Google

The Court must now determine whether it is apparent from the pleadings that the scope of the patent claims at issue are essentially the same as those asserted against Google. SEVEN asserted United States Patent Nos. 9,516,127 (the '127 Patent), 9,661,103 (the '103 Patent), and 10,063,486 (the '486 Patent) in either *Google I* or *Google II*.  SEVEN makes no argument that the causes of action based on these patents are different across cases.  It is apparent on the face of the pleadings that both the accused activity and the scope of the patent claims asserted for those patents are essentially the same.  Because the overlap of the transactional facts is so significant, the causes of action here are barred by claim preclusion.  Accordingly, the Court holds the portions of SEVEN's claims asserting the '127 Patent that are based on alleged infringing acts occurring before February 2, 2019 (the date of the *Google I* judgment) are barred by claim preclusion.  The Court further holds that the portions of SEVEN's claims asserting the '103 Patent and '486 Patent that are based on alleged infringing acts occurring before February 11, 2019 (the date of the *Google II* judgment) are barred by claim preclusion.  Thus, the Court grants Motorola's motion to dismiss as to these portions of SEVEN's claims.

### B. The Court Denies the Motion to Dismiss as to SEVEN's Causes of Action Asserting New Patents

The Court must now address the patents SEVEN asserts here but did not assert in the prior cases.  Generally, different patents raise different causes of action, but the fact

that the same patent was not involved in a prior case is not dispositive. *SimpleAir*, 884 F.3d at 1166. The critical inquiry is still the actual degree of overlap between the patents' claims and other transactional facts. *See XY, LLC v. Ova Genetics LLC*, 968 F.3d 1323, 1334 (Fed. Cir. 2020) (reversing dismissal under claim preclusion where the district court did not compare the scope of the patent claims as required under *SimpleAir*). Motorola argues that although SEVEN raises new patents, the patents and the accused products or processes are nevertheless essentially the same as in *Google I* and *Google II*. However, because it is not apparent on the face of the pleadings and other materials that the new patents asserted are "essentially the same" as those involved in SEVEN's litigation with Google, dismissal on claim preclusion grounds at this stage would be inappropriate.

    *1. It Is Not Apparent on the Pleadings that the '432 Patent and '734 Patent Are Essentially the Same. –* Motorola argues that claim preclusion bars SEVEN's cause of action based on United States Patent No. 10,154,432 (the '432 Patent) because it is essentially the same as United States Patent No. 10,091,734 (the '734 Patent) raised in *Google II*. In support, Motorola provides a color-coded chart comparing claim 1 of the '734 Patent with claim 1 of the '432 Patent. Def.'s App. 38-39; Compl. ¶ 104 [1] (alleging infringement of at least claim 1 of the '432 Patent). However, the Court agrees with SEVEN that differences between the claims in the two patents, at the very least, raise claim construction issues not resolvable on a motion to dismiss. For example, the '734 Patent requires "instructions from a user to enter a power save mode" while the '432 Patent describes "entering a power save mode based on an idle status of a screen." *See* Def.'s App. 38. As SEVEN points out, the existence of additional limitations in the '734 Patent

may mean that a product could infringe the claims of the '432 Patent without infringing the '734 Patent. The Court disagrees with Motorola's contention that these are trivial textual differences rather than patentable distinctions. A later-asserted patent possibly having a broader scope is important to the claim preclusion inquiry. *See SimpleAir*, 884 F.3d at 1166-67 (treating continuation patents differently from reexamination patents for claim preclusion purposes because continuation patents may provide larger claim scope than the parent patent). The Court declines to hold at this stage that these two patents lack any meaningful distinction despite the additional limitations present in the previously asserted patent. Because it is not apparent on the face of the pleadings that the '432 Patent and '734 Patent are essentially the same, the Court denies the motion to dismiss as to SEVEN's cause of action for infringement of the '432 Patent.

   **2.  It Is Not Apparent on the Pleadings that the '457 Patent and '056 Patent Are Essentially the Same. –** Motorola similarly argues United States Patent No. 9,602,457 (the '457 Patent) is essentially the same as United States Patent No. 9,603,056 (the '056 Patent) asserted in *Google II*. But comparison of the asserted claims in each case yields the same results as the comparison above, and Motorola's claim comparison chart glosses over textual differences. *See* Def.'s App. 42-43; Compl. ¶ 90 (alleging infringement of at least claim 1 of the '457 Patent). Here too, SEVEN has identified textual differences that might allow the patent asserted here to be infringed by a product that does not infringe the patent asserted previously. Claim 1 of the '056 Patent contains a limitation that the device "batche[s] data from [a] first application and [a] second application while a backlight of the mobile device is off." Def.'s App. 42. By contrast, claim 1 of the '457 Patent does not

refer to backlight status at all.  And without claim construction, it is not apparent that the seemingly broader language from the '457 Patent requiring "alter[ing] behavior of sending application data requests from the application" necessarily meets the argued equivalent '056 Patent limitation to "batch[ing] data from a first application."  *Id.*  Because it is not apparent on the face of the pleadings that the '457 Patent and '056 Patent are essentially the same, the Court denies the motion to dismiss as to SEVEN's cause of action for infringement of the '457 Patent.

   *3.  It Is Not Apparent on the Pleadings that the '161 Patent and '103 Patent Are Essentially the Same. –* Motorola argues United States Patent No. 10,299,161 (the '161 Patent) is essentially the same as the '103 Patent asserted in *Google II*.  *See* Def.'s App. 44-45 (claim comparison chart); Compl. ¶ 127 (alleging infringement of at least claim 1 of the '161 Patent).  Motorola points out that both claims "are directed to a mobile device with an application operating in the background of the device having the capabilities to (1) mobilize data after the device has been inactive, (2) predict user activity, and (3) mobilize data in response to the prediction."  Mot. to Dismiss 21.  But again, SEVEN has identified additional limitations present in the previously asserted patent that are not present in the patent in suit, and formal claim construction is necessary to determine whether the many textual differences between claim 1 of the '103 Patent and claim 1 of the '161 Patent create different claim scopes.  In particular, the '103 Patent recites batching sets of data and transmitting data for multiple applications, but the '161 Patent references only a single application.  It is not apparent on the face of the pleadings that the claims of these two

patents are essentially the same.  Accordingly, the Court denies the motion to dismiss as to SEVEN's cause of action for infringement of the '161 Patent.

> **4.  It Is Not Apparent on the Pleadings that the '199 Patent and '127 Patent Are Essentially the Same.** – Motorola argues that claim preclusion bars SEVEN's cause of action based on United States Patent No. 10,178,199 (the '199 Patent) because it is essentially the same as the '127 Patent raised in *Google I*.  Motorola compares asserted claim 11 of the '199 Patent to claim 11 of the '127 Patent.  Def.'s App. 37-38 (claim comparison chart); Compl. ¶ 117 (alleging infringement of at least claim 11 of the '199 Patent).  Here, Motorola raises an additional connection between these patents not raised for the pairs above: the '199 Patent is a continuation of the '127 Patent with a shared specification.

Motorola argues that parent and continuation patents with shared specifications are essentially the same because in "a different context, the Federal Circuit has recognized that continuation applications are merely 'a second application for the same invention.'"  Mot. to Dismiss 17 (quoting *Antares Pharm., Inc. v. Medac Pharma Inc.*, 771 F.3d 1354, 1358 (Fed. Cir. 2014) (citation omitted)).  The Federal Circuit expressly rejected this argument as a dispositive one in *SimpleAir* when it differentiated continuation patents from reexamined claims for claim preclusion purposes because "claims of terminally-disclaimed continuation patents could provide larger claim scope to a patentee than the patentee had under the parent patent."  *SimpleAir*, 884 F.3d at 1167 (internal quotation marks omitted).  While the Court disagrees with SEVEN's contention that this connection between patents is wholly irrelevant, the Federal Circuit's opinion in *SimpleAir* suggests it does not carry

significant weight in the analysis, especially without a terminal disclaimer.[3]  *See SimpleAir*, 884 F.3d at 1166-67 (noting a common specification is one example of overlapping transactional facts but heavily emphasizing the importance of comparing the claims themselves).  Thus, analysis of the claims themselves remains paramount because "it is the claims of the patent which define the invention," and "there is no prohibition on broadening claims in continuation patents."  *Id.*

The overlap of the claim language between claim 11 of the '199 Patent and claim 11 of the '127 Patent is more substantial than for the claims compared previously.  *See* Def.'s App. 37-38.  SEVEN responds by pointing to the following differences: (1) the '199 Patent lacks the "power save mode" limitation, instead reciting "altering a behavior" in response to screen status or motion; and (2) the '199 Patent lacks the "backlight" limitation, reciting a "screen status" instead.  Pl.'s Resp. Br. 17.  The Court holds that in light of these differences it is unclear without claim construction whether the textual differences create a difference in scope.  Accordingly, it is not apparent on the face of the pleadings that the patents are essentially the same, and the Court denies the motion to dismiss as to SEVEN's cause of action for infringement of the '199 Patent.

---

[3] A terminal disclaimer is a filing in which a patent holder disclaims a portion of the patent term to "remove[] the concern that issuance of a subsequent patent will effectively . . . extend the term" of another patent owned by the patent holder.  3 Robert A. Matthews, Jr., ANNOTATED PATENT DIGEST § 19:11 (Dec. 2021 update).  By filing a terminal disclaimer, the subsequent patent will expire earlier than it would otherwise, but the patent holder may avoid certain problems arising from the similarities between the two patents (an issue called obviousness-type double patenting).  *Id.*; *see also id.* § 19:8 (overviewing obviousness-type double patenting).

ORDER – PAGE 17

**5.  *It Is Not Apparent on the Pleadings that the '339 Patent and '056 Patent Are Essentially the Same. –*** Motorola argues that claim preclusion bars SEVEN's cause of action based on United States Patent No. 10,499,339 (the '339 Patent) because it is essentially the same as the '056 Patent raised in *Google II*.  Motorola compares asserted claim 1 of the '339 Patent to claim 1 of the '056 Patent.  Def.'s App. 35-36; Compl. ¶ 139 (alleging infringement of at least claim 1 of the '339 Patent).

In addition to the '339 Patent's status as a continuation patent, Motorola points to the terminal disclaimer filed for the '339 Patent disclaiming any patent term exceeding the term of the '056 Patent.  *See* Def.'s App. 670-73 (terminal disclaimer petition).  Motorola argues that by filing a terminal disclaimer, SEVEN conceded that the patents are not patentably distinct.  The Federal Circuit has foreclosed any argument that a terminal disclaimer is conclusive or gives rise to a presumption on this issue, but "the terminal disclaimer is still highly relevant to [the] inquiry."  *SimpleAir*, 884 F.3d at 1168.  A terminal disclaimer is "a strong clue that a patent examiner and, by concession, the applicant, thought the claims in the continuation lacked a patentable distinction over the parent."  *Id.*  Still, "the claim preclusion analysis requires comparing the patents' claims along with other relevant transactional facts."  *Id.*

The comparison of the patents' claims again discloses differences which may allow a product to infringe the patent asserted here but not the one asserted against Google.  The '056 Patent requires the device to "batch[] while a backlight of the mobile device is off" but the '339 Patent requires the device to "delay[] content request[s] . . . while the mobile

device screen is idle." Def.'s App. 35.  Whether these differences are material under the facts in this case cannot be resolved on a motion to dismiss.

Motorola argues that SEVEN previously conceded in *Google I* that the backlight limitation is not important to the '339 Patent invention.  For support, Motorola cites the district court's summary of the parties' positions on the construction of the terms "backlight" and "backlight status" in the '127 patent (a patent Motorola does not argue is the same as the '339 Patent).  *See* Def.'s App. 800-01.  Even if this information would be relevant, the Court is not persuaded because the cited claim construction order does not show such a concession.  In the order, the district court evaluated Google's proposed construction of "backlight" and "backlight status" that included the phrase "behind a non-emissive display."  *Id.*  SEVEN opposed the limitation to "non-emissive displays" on the grounds that the particular type of display technology was not critical to the invention of the '127 Patent, i.e., that the type of screen is unimportant to the construction of "backlight" as long as the viewing surface is illuminated from behind.  *Id.*  That position is not a concession that a change in claim text removing the backlight term is immaterial to the patent's scope.  For the reasons above, it is not apparent from the record on this motion that the differences between the '339 Patent and '056 Patent are essentially the same.  Thus, the Court denies the motion to dismiss as to SEVEN's cause of action for infringement of the '339 Patent.

### 6.  It Is Not Apparent on the Pleadings that the '228 Patent and '127 Patent Are Essentially the Same. – Motorola argues that claim preclusion bars SEVEN's cause of action based on United States Patent No. 10,595,228 (the '228 patent) because it is

essentially the same as the '127 patent raised in *Google I*.  Motorola compares asserted claim 1 of the '228 patent to claim 35 of the '127 patent.  Def.'s App. 40-41; Compl. ¶ 150 (alleging infringement of at least claim 1 of the '228 patent).  The '228 Patent is another continuation patent for which SEVEN filed a terminal disclaimer linking it to its comparator.  Def.'s App. 678-69 (terminal disclaimer petition).[4]

A side-by-side comparison of the claims themselves again discloses differences that, even with a terminal disclaimer, cannot be ignored at the motion to dismiss without a determination of claim scope.  Claim 1 of the '228 Patent recites "adjusting a timing of . . . data requests in order to conserve battery," which may be materially different than the '127 Patent l entering and exiting a power save mode at the prompting of a user selection.  Def.'s App. 40.

Motorola argues the additional limitations in claim 35 of the '127 Patent do not distinguish the patents because they were known in the art, citing *MAZ Encryption Techs., LLC v. Blackberry, Ltd.*, 347 F. Supp. 3d 283, at 290 (N.D. Tex. 2018).  In *MAZ*, the district court held it was clear that two patents' independent claims were essentially the same and that the plaintiff did not even dispute that they were.  *Id.*  The court then rejected the

---

[4] In this instance, Motorola argues an office action from the United States Patent and Trademark Office ("USPTO") shows the patent examiner rejected pending claims of the '228 Patent as not patentably distinct from the claims of the '127 Patent.  *See* Mot. to Dismiss 20; Def.'s App. 678-79.  The provided documents do not change the Court's analysis because they do not contain the text of the draft claims that the USPTO rejected. Further, SEVEN provided documents showing the USPTO withdrew the rejections following amendments made to the rejected claims.  Pl.'s App. 94 [36] ("Applicant's [previous] arguments and amendments, and the current amendments overcome the nonstatutory double patenting rejection . . . .  Therefore these rejections have been withdrawn.").

plaintiff's sole argument attempting to distinguish the patents: that the later-asserted patent's dependent claims rendered it distinct by adding a single limitation known in the art. *Id.* The Court reasoned that the addition of a limitation known in the art *narrowed* the claim compared to the independent claims already held to be the same. *See id.* SEVEN argues that the '228 Patent is broader because it lacks limitations found in the '127 Patent, and a determination of claim scope is necessary to determine if the textual differences are material. Thus, the Court denies the motion to dismiss as to SEVEN's cause of action for infringement of the '228 Patent.

Due to the procedural history of these cases, the Court is flying somewhat blind evaluating claim preclusion at this stage. Although there is no "actual litigation" requirement on the noninfringement issue for claim preclusion to ultimately apply, a lack of reasoning in the record supporting the prior merits judgments makes it difficult to tell at the motion to dismiss stage whether patent claims are "essentially the same" under the transactional facts. *Cf. SimpleAir*, 884 F.3d at 1168 (reasoning that the patentee failed to show how the continuation patent's altered claim language made inapplicable the Federal Circuit's prior reasoning for finding noninfringement of the parent patent); *see also VideoShare, LLC v. Google LLC*, 2020 WL 6365543, at *4 (W.D. Tex. 2020) (declining to compare the scope of patent claims because the analysis "has typically been applied only when infringement or noninfringement was fully adjudicated in the prior litigation").

Here, there is no prior reasoning supporting a finding of noninfringement to assist the Court in comparing the relevant contours of the patent claims' scope. Further, the briefs do not rely on prior claim construction rulings describing the scope of the patents for which

ORDER – PAGE 21

there is already a judgment of noninfringement.  For the reasons above, the Court declines to hold that the differences between SEVEN's patent claims are irrelevant as a matter of law.  These differences may prove immaterial at later stages of the case such that claim preclusion ultimately applies.  The Court holds only that despite the overlap in the patent claims and other transactional facts, it is not apparent on the face of the pleadings that claim preclusion applies to SEVEN's causes of action asserting patents not previously asserted against Google.

## V. The Court Grants Motorola's Motion to Dismiss SEVEN's Pre-Suit Induced Infringement Claims

Finally, Motorola argues SEVEN's induced infringement claims should be dismissed in their entirety for two reasons:  first, because the allegations in the complaint are bare recitations of legal elements, and second, because SEVEN failed to allege Motorola had pre-suit knowledge of the patents.  As explained below, SEVEN's allegations are sufficient to meet the induced infringement pleading requirements as to induced infringement occurring after the filing of the complaint only.

Allegations of induced infringement are subject to *Twombly* and *Iqbal*'s plausibility pleading standards.  *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1334 (Fed. Cir. 2012).  "For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement."  *Lifetime Indus., Inc., v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (internal quotation marks omitted).  Circumstantial

evidence can support a finding of specific intent required for inducement. *Vanda Parms. Inc. v. West-Ward Pharms. Int'l Ltd.*, 887 F.3d 1117, 1129 (Fed. Cir. 2018). "[I]nducement can be found where there is [e]vidence of active steps taken to encourage direct infringement, which can in turn be found in advertising an infringing use or instructing how to engage in an infringing use." *Barry v. Medtronic, Inc.*, 914 F.3d 1310, 1334 (Fed. Cir. 2019) (quoting *Vanda Pharms.*, 887 F.3d at 1129 (Fed. Cir. 2018)). Merely describing an infringing use is not the same as recommending, encouraging, or promoting infringement, but the content of instructions provided to a direct infringer may give rise to an inference of affirmative intent to infringe. *Takeda Pharms. U.S.A. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 630-31 (Fed. Cir. 2015).

### A. SEVEN's Fails to Plead Knowledge for Pre-Suit Induced Infringement

Motorola contends the inducement claims fail because the complaint does not allege Motorola had pre-suit knowledge of the asserted patents. Each of SEVEN's inducement allegations first assert — with no factual support — that "Motorola performs these [inducing] acts with knowledge of the [patent] and . . . that the induced acts directly infringe." *E.g.*, Compl. ¶ 75. The only factual allegation supporting Motorola's awareness of the patents or the direct infringement is Motorola's receipt of the complaint. *E.g.*, *id.* ("Motorola has had knowledge and notice of the [patent infringed] at least as of the filing of this complaint."). The Court must decide whether a lack of factual allegations plausibly supporting pre-suit knowledge of the patents requires dismissal of SEVEN's inducement claims entirely or, at least, for inducement pre-dating the complaint.

District courts across the country are divided on whether pre-suit knowledge is required to sustain a claim for induced infringement. *See ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 249 (D. Del. 2021) (collecting cases and holding a plaintiff cannot state a claim for indirect infringement by alleging knowledge solely based on the lawsuit). Neither party cites any binding authority or any cases from this district on this issue, relying mostly on cases from other district courts in Texas reaching opposite conclusions. *Compare Opticurrent, LLC v. Power Integrations, LLC*, 2016 WL 9275395, at *2-3 (E.D. Tex. 2016) (holding pre-suit knowledge is not required), *with Aguirre v. Powerchute Sports LLC*, 2011 WL 2471299, at *3 (W.D. Tex. 2011) (holding pre-suit knowledge is required).

SEVEN warns that a "pre-suit knowledge requirement for induced infringement would lead to absurd results [because] companies would have carte blanche to induce infringement purposefully provided that they were unaware of the patent prior to suit." Pl.'s Resp. Br. 24 (quoting *Opticurrent*, 2016 WL 9275395, at *2). The Court agrees with SEVEN that a lack of pre-suit knowledge should not bar induced infringement claims based on conduct occurring after a defendant receives notice via the complaint. But notice from the lawsuit cannot support allegations of pre-suit induced infringement because knowledge that the patent exists and that the induced acts constitute infringement remain critical elements of establishing an inducement claim. Accordingly, the Court holds a plaintiff's failure to adequately plead pre-suit knowledge requires dismissal of claims for induced infringement based on pre-suit conduct only.

Here, SEVEN's failure to plead facts supporting pre-suit knowledge compels dismissal of any claims for pre-suit induced infringement.  Nothing in the complaint plausibly suggests Motorola knew of SEVEN's patents before it received notice of the complaint in this case.  Thus, SEVEN has not pled facts plausibly supporting a claim for relief for induced infringement as to acts occurring before this lawsuit began.  The Court grants Motorola's motion to dismiss as to all pre-suit induced infringement claims and proceeds to analyze whether SEVEN has stated a claim for post-complaint inducement.

### B.  SEVEN's Post-Complaint Inducement Allegations Are Not Bare Recitations of Legal Elements

Other than the allegations of pre-suit knowledge, SEVEN's induced infringement allegations are sufficient under the plausibility pleading requirements.  The complaint alleges Motorola infringed its patents and induced its customers to infringe each patent by "providing instructions, documentation and other information to customers and end-users suggesting they use the Accused Products in an infringing manner, including in-store technical support, online technical support, marketing, product manuals, advertisements, online documentation, marketing materials, technical specifications, data sheets, web pages . . . , press releases, user manuals, and trade shows."  *E.g.*, Compl. ¶ 75.  SEVEN further alleges Motorola "continues to directly and indirectly infringe the Patents-in-Suit." *Id.* ¶ 76.  The complaint lists specific methods Motorola allegedly used to distribute information suggesting customers use its products in an infringing manner and continues to do so after receiving notice of the patents and direct infringement.  These are factual

allegations that, taken as true, are sufficient to raise a right to relief above the speculative level based on Motorola taking active steps to induce infringement.

In the motion, Motorola argues that the allegations quoted above fail to overcome dismissal because they are "generic business practices or marketing and sales methods." Def.'s Br. Supp. Mot. to Dismiss 24. However, the cited cases do not require dismissal of SEVEN's claims. First, Motorola cites *Takeda Pharmaceuticals*, which held a plaintiff seeking a preliminary injunction failed to establish a likelihood of success on the merits because the instruction label in evidence described, but did not promote, infringing uses. *Takeda Pharms. U.S.A. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 630-34 (Fed. Cir. 2015). That case does not discuss pleading requirements, nor does it stand for the proposition that marketing and sales practices can never give rise to induced infringement liability. Regardless, SEVEN alleges that Motorola provided specific materials like product manuals to end users suggesting infringing uses. Second, Motorola cites *Addiction & Detoxification Inst., L.L.C. v. Carpenter*, a case where the complaint contained no allegations of intent or specific acts caused by the defendants. 620 F. App'x 934, 938 (Fed. Cir. 2015) (unpub.). The Federal Circuit held amendment was futile because the proposed amended complaint generically stated that the defendants acted "with specific intent to urge, instruct, encourage" infringement by "causing[,] urging, aiding, or instructing others to [infringe]." *Id.* The amended complaint still alleged no actions taken by the defendants that could plausibly support the requisite inferences of intent. By contrast, SEVEN alleges Motorola provides information to their users suggesting infringement via a list of specific channels such as product manuals and online technical support. Accordingly, the Court

ORDER – PAGE 26

holds SEVEN's post-complaint inducement allegations are not bare recitations of legal conclusions and denies the motion to dismiss as to these claims.

## CONCLUSION

The portions of SEVEN's cause of action for infringement of the '127 Patent that are based on acts occurring before February 2, 2019 are barred by claim preclusion. Additionally, the portions of SEVEN's causes of action for infringement of the '103 Patent and '486 Patent that are based on acts occurring before February 11, 2019 are barred by claim preclusion.  Because SEVEN failed to adequately plead pre-suit knowledge, the Court holds SEVEN fails to state a claim for induced infringement occurring before it filed the complaint on May 7, 2021.  Accordingly, the Court grants Motorola's motion to dismiss as to those portions of SEVEN's claims and denies the motion as to all other claims.  The Court grants SEVEN leave to replead the dismissed induced infringement claims within twenty-one (21) days of the date of this Order.

Signed February 10, 2022.

David C. Godbey
United States District Judge

ORDER – PAGE 27