IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SEVEN NETWORKS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-CV-1036-N |
| | § | |
| MOTOROLA MOBILITY, LLC, | § | |
| | § | |
| Defendant. | § | |

# MEMORANDUM OPINION AND ORDER

This Order addresses the construction of several disputed claim terms pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). SEVEN Networks, LLC ("SEVEN") contends that Motorola Mobility, LLC ("Motorola") infringes several United States Patents.[1] Having reviewed the relevant intrinsic evidence in the record, and such extrinsic evidence as necessary, the Court construes the disputed terms and phrases as provided below.

## I. BACKGROUND OF THE INVENTIONS

The Patents generally relate to techniques for optimizing power usage on mobile devices, i.e., cell phones. Motorola argues that all but two of the terms ("backlight" and "mobile device") are indefinite. The Court generally disagrees.

---

[1] They are United States Patent Nos. 9,516,127, 9,661,103, 10,063,486, 10,154,432, 10,178,199, 10,299,161, 10,499,339, and 10,595,228.

ORDER – PAGE 1

## II. BASIC CLAIM CONSTRUCTION STANDARDS

Claim construction is a question of law for the Court, *see Markman*, 517 U.S. at 391, although it may involve subsidiary factual questions. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 324-28 (2015). In construing the claims of a patent, the words comprising the claims "are generally given their ordinary and customary meaning" as understood by "a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (citations and internal quotation marks omitted). Accordingly, courts must determine the meaning of claim terms in light of the resources that a person with such skill would review to understand the patented technology. *See id.* at 1313 (citing *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998)).

First, "the person of ordinary skill in the art is deemed to read the claim term . . . in the context of the entire patent, including the specification." *Id.* If the specification "reveal[s] a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess . . . , the inventor's lexicography governs." *Id.* at 1316. Likewise, if "the specification . . . reveal[s] an intentional disclaimer, or disavowal, of claim scope by the inventor . . .[,] the inventor's intention, as expressed in the specification, is regarded as dispositive." *Id.* (citation omitted). While the claims themselves provide significant guidance as to the meaning of a claim term, the specification is generally dispositive as "it is the single best guide to the meaning of a disputed term." *Id.* at 1314-15 (internal quotation marks omitted).

In addition to the specification, courts must examine the patent's prosecution history – that is, the "complete record of the proceedings before the PTO and includ[ing] the prior art cited during the examination of the patent." *Id.* at 1317 (citation omitted). "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Id.* (citation omitted). In particular, courts must look to the prosecution history to determine "whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* (citations omitted). "[W]here the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003).

Finally, in addition to evidence intrinsic to the patent at issue and its prosecution history, courts may look to "extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Phillips*, 415 F.3d at 1317 (quoting *Markman*, 52 F.3d at 980). In general, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* at 1318.

When the intrinsic evidence, that is the patent specification and prosecution history, unambiguously describes the scope of a patented invention, reliance on extrinsic evidence, which is everything outside the specification and prosecution history, is improper. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). While the Court may consult extrinsic evidence to educate itself about the invention and relevant

technology, it may not rely upon extrinsic evidence to reach a claim construction that is clearly at odds with a construction mandated by the intrinsic evidence. *See Key Pharm. v. Hercon Labs. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998).

### III. DISPUTED TERMS[2]

### A. U.S. Patent No. 9,516,127

**1. Backlight** (Claims 1, 10, 17)

Plaintiff's Proposed Construction – An illumination device that provides light behind a viewing surface

Defendant's Proposed Construction – Plain and ordinary meaning

Analysis:

Although Motorola claims to want the Court to use the plain and ordinary meaning, its experts put a gloss on that, limiting it to "a light source behind an LCD screen." Wicker Decl. ¶ 174 [102-23]. The Eastern District of Texas has twice used SEVEN's proposed construction. *See SEVEN Networks, LLC v. Google*, No. 2:17-CV-442 (E.D. Tex. Oct. 23, 2018) ("Google Markman"); *SEVEN Networks LLC v. Apple Inc.*, No. 2:19-CV-115 (E.D. Tex. Mar. 31, 2020) ("Apple Markman").

---

[2] SEVEN erroneously briefed the term "blocking a first channel to reduce network signaling in a network and to reduce battery consumption." The Court thus omits construction of that term. SEVEN also initially briefed the term "Transmits the [data] to the mobile device." *See* SEVEN Br. at 11-12 [102]. Motorola notes that SEVEN then dropped its infringement claims containing that term, *see* Motorola Br. at 2 n.2 [108], and neither party subsequently addressed that term. The Court will therefore not construe the term.

ORDER – PAGE 4

The actual dispute between the parties appears to be whether the term "backlight" implicitly requires older-technology displays, such as LCD, or includes contemporary emissive displays such as OLED. The patent itself appears to be agnostic regarding which technology the display uses: "The display device can include, by way of example but not limitation, a cathode ray tube (CRT), liquid crystal display (LCD), or some other applicable known or convenient display device." '127 Patent at 20:53-57. Accordingly, the Court will follow the Eastern District and adopt SEVEN's proposed construction.[3]

### B. US Patent No. 10,063,486

**1. Mobile device** (Claims 1, 11)

Plaintiff's Proposed Construction – Plain and ordinary meaning

Defendant's Proposed Construction - Mobile, hand held or portable devices, wireless devices, or nonportable devices and can be any of, but not limited to, a server desktop, a desktop computer, a computer cluster, or portable devices, including a notebook, a laptop computer, a handheld computer, a palmtop computer, a mobile phone, a cell phone, a smart phone, a PDA, a Blackberry device, a Palm device, any tablet, a phablet (a class of smart phones with larger screen sizes between a typical smart phone and a tablet), a handheld tablet (e.g., an iPad, the Galaxy series, the Nexus, the Kindles, Kindle Fires, any Android-based tablets, Windows-based tablets, or any other tablet), any portable readers/reading devices, a hand held console, a hand held gaming device or console, a head mounted device, a head mounted display, a thin client or any SuperPhone such as the iPhone, and/or

---

[3] The Court will use the same construction for U.S. Patent No. 9,661,103.

any other portable, mobile, hand held devices, or fixed wireless interface such as a M2M device, etc.

Analysis:

Motorola's proposed construction comes from a portion of the specification discussing both client devices and mobile devices. It states that "the client/mobile devices 150 can include," followed by the various devices in Motorola's proposed definition. '486 Patent at 6:33-7:4. Thus, the language Motorola quotes expressly includes both client and mobile devices. That is consistent with the fact that the quoted language includes several nonportable devices, such as a server desktop, a desktop computer, a computer cluster, which would not typically be considered mobile. *Accord* Goodrich Decl. at ¶ 165 [102-22].

Accordingly, the Court will adopt SEVEN's proposed construction.[4]

**2.   The application traffic** (Claims 1, 11)

Plaintiff's Proposed Construction – Plain and ordinary meaning

Defendant's Proposed Construction – Indefinite

Analysis:

The claim refers to a first application and a second application, both configured to receive communications over a second channel established over the network. Motorola argues this language is indefinite because there is no antecedent, and a person of ordinary skill in the art would be unable to tell whether "the application traffic" refers to traffic for

---

[4] The Court will use the same construction for U.S. Patent No. 10,154,432.

ORDER – PAGE 6

the first application, the second application, or both. The Court finds Motorola's argument insufficient to rebut the presumption of validity by clear and convincing evidence. The Court agrees with SEVEN that in context, the phrase refers to any application traffic on the second channel. The Court thus will apply the plain and ordinary meaning.

### C. U.S. Patent No. 10,154,432

**1. Idle status of a screen** (Claims 1, 12, 23)

Plaintiff's Proposed Construction – Plain and ordinary meaning

Defendant's Proposed Construction – Indefinite

Analysis:

Motorola's expert argues that this term is indefinite because it could encompass different types of idle status. *See* Wicker Decl. at ¶¶ 224-26. SEVEN's expert disagrees and declares that a person of ordinary skill in the art would find the term is reasonably definite using its plain and ordinary meaning. *See* Jones Decl. ¶¶ 62-69. The Court finds the Jones Declaration more persuasive on this point and will construe "idle status of a screen" as having its plain and ordinary meaning.

### D. U.S. Patent No. 10,178,199

**1. "Altering behavior" term** – "wherein the altering behavior is based on application settings, wherein the application settings enable the altering behavior in response to a user selecting the application for the altering behavior and disable the altering behavior in response to a user deselecting the application for the altering behavior" (Claims 1, 11)

Plaintiff's Proposed Construction – Plain and ordinary meaning

Defendant's Proposed Construction – Indefinite

Analysis:

Motorola argues that this term is ambiguous because the two phrases "a user selecting" and "a user deselecting" are ambiguous as they do not make clear whether it is the same user or two different users. SEVEN's expert responds that it does not matter – a person of ordinary skill in the art would understand that it could be the same user, it could be a different user, the invention does not care, it just needs to be *some* user. *See* Goodrich Decl. ¶¶ 146-50. The Court finds that Goodrich's reading is a natural reading of the plain language and will adopt the plain and ordinary meaning of this term.

### E. U.S. Patent No. 10,299,161

**1. Wherein the user of the mobile device is inactive and a screen status of the mobile device is off** (Claims 1, 7)

Plaintiff's Proposed Construction – Plain and ordinary meaning

Defendant's Proposed Construction – Indefinite

Analysis:

Motorola claims this term is indefinite because the word "inactive" is ambiguous. *See* Wicker Decl. at ¶¶ 244-46. SEVEN, in contrast, believes this is a contrived issue. *See* Goodrich Decl. at ¶¶ 197-204. The Court agrees that Motorola has simply demonstrated that natural language is not mathematically precise. The Court agrees with Goodrich that the meaning of "inactive" is reasonably ascertainable from the language of the specification and claims, and therefore will apply the plain and ordinary meaning.

### F. U.S. Patent 10,499,399

#### 1. At about the same time (Claim 1)

Plaintiff's Proposed Construction – Plain and ordinary meaning

Defendant's Proposed Construction – Indefinite

Analysis:

Motorola argues that this term is indefinite because it is one of degree, and no guidance is given to the amount of permissible variance. *See Liberty Ammunition, Inc. v. United States*, 835 F.3d 1388, 1397 (Fed. Cir. 2016). SEVEN's expert disagrees. *See* Jones Decl. at ¶¶ 81-87. According to Jones, a person of ordinary skill in the art would understand that claim 1 refers to a process of grouping content requests and transferring them sequentially over the network ("batching") instead of transmitting them one-by-one as received. Of necessity, because transmitting each request take some amount of time, the requests cannot be transmitted or received simultaneously. Jones says a person of ordinary skill in the art would understand "at about the same time" to refer to amount of delay inherent in sequentially transmitting the batched content requests. The Court accepts Jones's explanation and will therefore use the plain and ordinary meaning of this term.

### G. U.S. Patent No. 10,595,228

#### 1. Monitoring a time of use of the multiple applications operating on the mobile device (Claims 1, 10)

Plaintiff's Proposed Construction – Plain and ordinary meaning

Defendant's Proposed Construction – Indefinite

ORDER – PAGE 9

Analysis:

Motorola contends that this term is indefinite because "time of use" is ambiguous and could refer to a variety of metrics, such as the time a user spent interacting with an application, or the amount of time the application consumes mobile device resources, e.g., the CPU. *See* Wicker Decl. at ¶¶ 259-62. SEVEN argues that the metric is irrelevant; the invention works regardless which metric you choose. *See* Jones Decl. at ¶¶ 102-06. But allowing *any* metric to meet this limitation would leave a person of ordinary skill in the art unsure of the scope of the claim. The Court in this case agrees with Motorola and finds the term is indefinite.

## IV. INVALIDITY ARGUMENTS

Motorola makes two broad arguments that several claims are invalid. Motorola first argues that some claims are mixed apparatus method claims. Motorola then argues that other claims using the term "processor" invoke section 112(6) without reciting sufficient structure. The Court will address those arguments in turn.

### *A. Mixed Claims*

Various of the claims[5] recite an apparatus configured for responding in various ways to various actions. Motorola contends that the listed actions constitute the steps of a method, thus making the claims an improper mixed apparatus method claim. *See IXPL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005). SEVEN argues that the claims recite a physical structure (e.g., storage and a processor) and then

---

[5] Specifically, those are: '127 Patent, claims 33 and 42; '161 Patent, claims 1 and 7; and '486 Patent, claim 11.

describe the capability of the structure to respond to various events. The claims do not claim the sequence of events, but only the capability of the hardware to respond to those events. See *MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1315-16 (Fed. Cir. 2017); *Microprocessor Enhancement Corp. v. Texas Instr., Inc.*, 520 F.3d 1367, 1375 (Fed. Cir. 2008). The Court agrees with SEVEN's reading of the Federal Circuit's precedent. Accordingly, the Court finds the claims are not improper mixed apparatus method claims.[6]

The '486 Patent, claim 11 deserves some separate discussion. The parties dispute the significance of the typographical layout of the claim. Motorola believes that the claim should be parsed as follows:

11. A mobile device comprising:

[A] a memory; and

[B] a processor configured for:

    [1] detecting user inactivity on a mobile device;

    [2] in response to detected inactivity:

        [a] blocking a first channel . . .

        . . . .

        [e] unblocking the first channel . . .; and

        [f] re-blocking the first channel . . .

---

[6] Whether it is a good idea to permit a patent drafter to incorporate what is basically a method into an apparatus simply by prefacing the method with "a processor configured to . . ." is a different question that is not before the Court.

[C] unblocking the first channel when user activity . . . .

Thus, in Motorola's view, claim 11 claims a mobile device comprising [A] a memory; [B] a processor configured for [omitted]; and [C] unblocking [etc.]. It thus would claim two hardware elements and, improperly, a method step. There is a problem with that view. Specifically, the "and" is actually placed between [A] and [B], not before [C]. *See* '486 Patent at 33:44. This indicates that the mobile device comprises a memory and a processor, not a memory, a processor, and unblocking. The Court believes the correct parsing of claim 11 is as follows:

11. A mobile device comprising:

[A] a memory; and

[B] a processor configured for:

    [1] detecting user inactivity on a mobile device;

    [2] in response to detected inactivity:

        [a] blocking a first channel . . .

        . . . .

        [e] unblocking the first channel . . .; and

        [f] re-blocking the first channel . . .

    [3] unblocking the first channel when user activity . . . .

Thus, the processor is configured for [1] detecting; [2] in response, blocking, etc.; and [3] unblocking.[7] Accordingly, the Court finds that claim 11 does not improperly mix hardware and a method step.

### B. "Processor" Is Not a Nonce Word

In *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (en banc)[8], the Federal Circuit considered the force of the presumption that use of the word "means" is necessary to invoke means-plus-function under 35 U.S.C. § 112, ¶ 6. The Court held that the presumption is not strong. *Id.* at 1349. It further held that use of the term "module" invoked means-plus-function. *Id.* at 1350. Following the district court, it understood that "module" is simply a generic description for software or hardware that performs a specified function. *Id.*

> Generic terms such as "mechanism," "element," "device," and other nonce words that reflect nothing more than verbal constructs may be used in a claim in a manner that is tantamount to using the word "means" because they typically do not connote sufficiently definite structure and therefore may invoke § 112, para. 6.

*Id.* (quotation omitted). The Court also found it unavailing that one skilled in the art could have programmed a computer to perform that function. "[T]he fact that one of skill in the art could program a computer to perform the recited functions cannot create structure where none otherwise is disclosed." *Id.* at 1351. "The standard is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite

---

[7] Note the "and" at the end of item [e] indicates that item [f] is the last step of [2]. *See* '486 Patent at 33:67.
[8] Only Part II.C.1 of the opinion is en banc. *See id.* at 1347 n.3.

meaning as the name for structure." *Id.* at 1349. "When a claim term lacks the word 'means,' the presumption can be overcome and § 112, para. 6 [now § 112(f)] will apply if the challenger demonstrates that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Id.* (quoting *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)).

As an initial matter, none of the claims at issue uses the word "means," thus triggering the presumption that they are not means plus function claims. The burden then is on Motorola to overcome the presumption.

The Federal Circuit has held that the terms "digital processing unit," "general purpose computer," and "central processing unit" all denote structure sufficient to avoid section 112(f). *Samsung Elec. Am. Inc. v. Prisua Eng'g Corp.*, 948 F3d 1342, 1354 (Fed. Cir. 2020); *see also Realtime Data LLC v. Rackspace US, Inc.*, 2017 WL 2590195, at *16-*17 (E.D. Tex. 2017) (same); SEVEN Br. at 24 n.10 (collecting E.D. Tex. Cases). The term here of "processor" is also synonymous with those terms. *See* Goodrich Decl. ¶ 38; Jones Decl. ¶ 111. Accordingly, the Court finds that Motorola has failed to rebut the presumption that section 112(f) does not apply. The Court also finds the same analysis applies to the "mobile device" term.[9]

---

[9] The parties dispute whether the specification provides enough information for a person of ordinary skill in the art to "configure" the processor, i.e., are sufficient algorithms disclosed. The Court believes that question is better addressed as an enablement question, rather than a claim construction issue.

ORDER – PAGE 14

## CONCLUSION

The Court orders that the various patent terms are construed as indicated. The Court has attempted to address all of the terms the parties believe require construction, but acknowledges that it may have missed something. If there are terms requiring construction that are not adequately addressed by this Order, the parties may request clarification. The Court will by separate order establish a schedule for resolution of the remaining issues in the case.

Signed April 11, 2023.

_____
David C. Godbey
Chief United States District Judge