IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SEVEN NETWORKS, LLC, § | | |
| § | | |
| Plaintiff § | | |
| § | | |
| v. § | | Civil Action No. 3:21-CV-1036-N |
| § | | |
| MOTOROLA MOBILITY LLC, § | | |
| § | | |
| Defendant. § | | |

## ORDER

This Order addresses Defendant Motorola Mobility LLC's ("Motorola") motion for summary judgment [138]. Because the Court finds genuine issues of material fact, the Court denies the motion.

### I. BACKGROUND

#### *A. Android*

Plaintiff SEVEN Networks, LLC ("SEVEN") contends that its portfolio of patents is infringed by the sale of a Motorola mobile phone using the Android operating system. Android is, at least in part, created by Google LLC (now Alphabet) and its predecessors. *See generally Google LLC v. Oracle America, Inc.*, 141 S. Ct. 1183 (2021). Android is now one of the primary operating systems for mobile phones.

In the beginning, each handset vendor had to provide an operating system for its hardware, often custom made. Google's vision was to create a common operating system and environment that many handset manufacturers could use. Google developed Android to that end. It is not entirely clear what "Android" is. It certainly includes an operating

ORDER – PAGE 1

system for handset hardware, but it apparently includes quite a bit more. It may be best understood as an ecosystem. It is also not clear exactly what rights Google has in "Android."

Google's business model with Android is somewhat similar to its business model with its search engine. It basically gives Android to handset manufacturers under certain restrictions that allow Google to obtain revenue from, e.g., advertising. In addition to being a vendor to handset manufacturers, Google is also a direct competitor manufacturing its own handsets, currently under the Pixel name.[1]

### B. Motorola, Google, and SEVEN

Motorola is one of the oldest mobile phone vendors.[2] It currently manufactures mobile phone handsets using the Android OS. Apparently Motorola has a contractual relationship with Google that allows Motorola to provide its handsets to consumers (either directly or indirectly) with the Android OS installed. This contractual relationship also permits Motorola to modify Android to some extent so that Motorola phones have a unique "Motorola" feel distinct from the Android implementations of other handset vendors. The precise details of the Google-Motorola contractual relationship are not entirely clear on the present MSJ record.

SEVEN in this case has sued Motorola, arguing that its Android handsets infringe on SEVEN's patents. Apparently, SEVEN's infringement contentions are intrinsic to

---

[1] Previously under the Nexus brand.
[2] There have been corporate transactions that may affect the literal accuracy of this statement, but not in ways germane to this Order.

Android, meaning the Android OS and associated applications and services. That is, SEVEN does not claim that Motorola took stock Android that did not infringe and customized it and thus made it infringing. It appears that SEVEN's infringement theory would apply to any handset using Android.

Recall Google also manufactures its own Pixel handsets. SEVEN previously sued Google for patent infringement. SEVEN and Google eventually settled that lawsuit (the "SEVEN-Google Settlement"). It is the precise contours of that Settlement that are at issue in the instant motion for summary judgment.

## II. FACT ISSUES PRECLUDE SUMMARY JUDGMENT

### A. Patent Exhaustion Basics

"For over 150 years [the Supreme] Court has applied the doctrine of patent exhaustion to limit the patent rights that survive the initial authorized sale of a patented item." *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617, 621 (2008). "The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item." *Id.* at 625. The idea is that the patent owner is entitled to only a single compensation for the sale of a patented item. It cannot impose limitations on downstream use or extract additional compensation if the item is resold.

"A conventional sale of an article is not required for exhaustion to apply, because the form of a disposition does not govern." *Cyrix Corp. v. Intel Corp.*, 846 F. Supp. 522, 539 (E.D. Tex. 1994), *aff'd* 42 F.3d 1411 (Fed. Cir. 1994). This includes a license. *See Quanta Computer, supra*.

ORDER – PAGE 3

## B. Motorola's Theory

Motorola's theory is fairly straightforward. In the SEVEN-Google Settlement, SEVEN granted Google a license to the patents-in-suit. That agreement allows Google to practice the patents in its Android OS. Then, by its arrangement with Motorola, Google "sells" copies of Android to Motorola for it to incorporate into its handsets. Under the patent exhaustion doctrine, SEVEN cannot sue Motorola for infringement because it exhausted its rights in the Android embodiment when it entered into the SEVEN-Google Settlement. *See Cascades Comput Innov., LLC v. Samsung Elec. Co.*, 70 F. Supp. 3d 863 (N.D. Ill. 2014).[3]

## C. The Catch

Motorola points to language in the SEVEN-Google Settlement stating that Google received a "license under the Company Patents to make, have made, use, have used … distribute … sell … dispose of … [and] provide … Licensed Products." APPX2643–44. But SEVEN points to other language in that agreement:

> The Agreement contains a comprehensive definition of "Licensed Products." APPX2643. Licensed Products includes Google's Android devices, and any Android operating system and Google applications installed thereon, but expressly "exclude[s] . . . any and all products of third parties, including Android Partners and Excluded Entities, even if such third-party products use any Google applications or services." *Id.* Motorola, and the other Android device makers, are listed as Android Partners and Excluded Entities. *Id.* at APPX2674. The definition of Licensed Products additionally states that "to the extent third-party products have Google applications or services, such Google applications or services are not licensed on those third-party products." *Id.* at APPX2643. The unambiguous import of this language is to preclude Google from distributing "applications or services" to third

---

[3] Motorola has a tendency to talk about Android as if it were a physical chattel, manufactured by Google and sold to Motorola for inclusion in its handsets. It is not.

ORDER – PAGE 4

parties (e.g., the Android Partners and Excluded Entities) for use on their products.

SEVEN Br. at 9.

It is possible that if the Court took longer with the documents it could determine as a matter of law that the SEVEN-Google Settlement does not authorize Google to sublicense the SEVEN patents to other handset makers like Motorola. It is sufficient for the present to note that the Settlement is *at best* ambiguous regarding whether Google can sublicense the SEVEN technology to Motorola. Because the transfer to Motorola must be authorized under the Settlement for patent exhaustion to apply, *see supra Quanta Computer*, there is at minimum a fact issue regarding patent exhaustion.

### D. Cascades Computer *Is Different*

At first blush, this result seems in conflict with *Cascades Computer*. 70 F. Supp. 3d 863 (N.D. Ill. 2014). There, the patent-holder (Cascades Computer) licensed Google to use its technology, which was in Android, "in any Google Product." Google licensed Android to other handset manufacturers, which the patent holder then sued for infringement. The court granted the manufacturers' summary judgement based on patent exhaustion. The license included "any Google Product." *Id.* at 865. Google Product, in turn, was defined as "product of Google, Motorola and/or Google Affiliates, including all Motorola and Nexus devices but . . . excludes mobile devices manufactured by third parties and running the Android OS except any Nexus-branded devices." *Id.*

The court stated "[i]t is undisputed that the Android operating system is a Google product; no reasonable fact finder could find otherwise. . . . Thus the license agreement

ORDER – PAGE 5

authorized Google, from that day forward, to convey the Android operating system – including the [allegedly infringing technology] – without fear of a claim of infringement by" the patent holder. *Id.* at 866.

So when Google conveyed Android to the handset manufacturers, that was an authorized conveyance, since the patent holder had licensed Android itself. That the license attempted to carve out other handset manufacturers was irrelevant. Because the conveyance of Android was authorized, the exclusion of other handset manufacturers from the definition of "Google Product" was at most an attempted post-sale limitation on use, like that found invalid in *Quanta Computer*, 553 U.S. 617 (2008). *See Cascades*, 70 F. Supp. 3d at 867-68. Put differently, it did not matter that the defendants' handsets were not licensed Google Products, because Android itself was a licensed Google Product.

If SEVEN's construction of the SEVEN-Google Settlement is correct, SEVEN never licensed Android per se. It licensed Android running on Google hardware. Thus Google's transfer of Android to Motorola was not "authorized" as required for patent exhaustion. Accordingly, this Court's ruling does not conflict with *Cascades Computer*.

This result is also consistent with the concept of patent exhaustion. There is nothing intrinsically wrong with permitting SEVEN to license its technology for Google hardware only, without simultaneously licensing every Android handset manufacturer on the planet. According to SEVEN, it was not compensated for anything more than Google hardware and so is not seeking to double dip by asserting its rights against other Android handset manufacturers.

## CONCLUSION

In view of this issue, the Court need not reach the parties' other arguments. Because there is a genuine issue of material fact, the Court denies Motorola's motion for summary judgment on patent exhaustion.

Signed March 20, 2024.

_____
David C. Godbey
Chief United States District Judge